IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BLUEWAVE TECHNOLOGY GROUP, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. |
| v. ) | |
| ) | Judge: |
| JOHN WUKOVITS, ) | |
| ) | Magistrate Judge: |
| Defendant. ) | |
| ) | |
| ) | |

**VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

Plaintiff Bluewave Technology Group, LLC ("Bluewave" or the "Company"), by and through its undersigned counsel, and for its Verified Complaint for Injunctive and Other Relief against Defendant John Wukovits ("Wukovits" or "Defendant"), alleges as follows:

**INTRODUCTION**

1. This case concerns a former Regional Sales Executive for Bluewave, Defendant John Wukovits, who has breached and continues to breach his contractual obligations to Bluewave by actively soliciting Bluewave customers with whom he worked at Bluewave and using Bluewave's confidential information in doing so.

2. Following his termination by Bluewave for cause in April 2023, Wukovits went to work for a direct competitor of Bluewave. Unbeknownst to Bluewave until recently, Wukovits has been using his position at the competing entity to solicit Bluewave customers with whom he worked while at Bluewave, in direct violation of his post-employment contractual obligations to Bluewave. When Bluewave confronted Wukovits with this information and

1

demanded that he cease and desist these activities, Wukovits did not deny that he was soliciting Bluewave customers and defiantly insisted he would continue to do so.

3. Accordingly, Bluewave bring this action to enforce the non-solicitation and non-disclosure provisions set forth in the Confidential Information, Inventions Assignment, Non-Solicitation and Non-Competition Agreement ("Agreement") that Wukovits entered into with Bluewave, in order to restrain Wukovits from causing or inflicting further irreparable harm to the Company.

## THE PARTIES

4. Plaintiff Bluewave is a Delaware limited liability company. Bluewave services clients across the United States. Bluewave's sole member is Bluewave Acquisition, Inc., which is a Delaware corporation with its principal place of business in New Jersey.

5. Defendant is a citizen of Illinois who, upon information and belief, resides in Chicago, Illinois.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the parties in this action pursuant to 28 U.S.C § 1332(a)(1), as there is complete diversity of citizenship between the parties and the matter in controversy exceeds the sum or value of $75,000.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2), as a substantial portion of the events or omissions giving rise to the claims herein occurred in this judicial district.

8. Pursuant to Section 19 of the Agreement, the parties have agreed to the exclusive jurisdiction of the courts located within the State of Illinois.

**FACTUAL BACKGROUND**

**Bluewave's Business**

9. Bluewave is a technology company that assists various companies and organizations in the purchasing and management of cloud, network, cybersecurity, infrastructure, data center, and communications technologies from a global network of service providers, including AT&T, Cox, Verizon, Zoom, and many more.

10. Bluewave generates revenue by identifying its customers' technology resource needs and connecting its customers with various service providers who provide technology services to meet those needs. The service providers compensate Bluewave for facilitating these transactions and for ongoing support provided by Bluewave.

11. Bluewave's customer base is diverse. The Company supports a range of organizations spanning from healthcare networks and insurance companies to food and beverage distributors and manufacturing companies.

12. Bluewave expends considerable resources to attract, service, and retain its customers. These efforts include reaching out to prospective customers to determine their technology needs; assessing those needs by identifying the company's goals, key performance indicators, and technical requirements; recommending solutions and leveraging its broad base of service provider partners to provide the best solution for each individual technology need; delivering those solutions; and providing implementation support, solution optimization, and expense management services.

13. Bluewave's customer development efforts have been very successful. Many of Bluewave's customers have been engaged with Bluewave for years and/or have been engaged by

entities that Bluewave acquired, with the goodwill associated with such customer relationships expressly being acquired in connection therewith.

14. In addition to long-term customer relationships and goodwill, another key to Bluewave's competitive advantage is its Confidential Information, including but not limited to customer names; information concerning price arrangements with customers; information concerning customers' needs, desires, and preferences (and how Bluewave used such information to maintain a competitive advantage); proposals; bids; contracts and their contents; the type and quantity of products and services provided or sought to be provided; marketing plans; business strategies; financial information; and Bluewave's specific contacts at each customer's organization. This information and the related customer relationships are and have been cultivated through substantial time, effort, cost and investment by Bluewave; are not publicly available; are proprietary and deemed confidential by Bluewave; and are not known outside of Bluewave.

15. Bluewave takes reasonable steps to protect the confidentiality of its Confidential Information, including but not limited to providing the Confidential Information only to those employees who need the information to perform their job duties and by requiring those employees to sign restrictive covenants (the Agreement) prior to and as a condition of being provided with access to the Confidential Information. Bluewave also maintains a robust cybersecurity protocol with respect to access to laptops and other electronic storage devices containing Confidential Information, including requiring use of VPNs, password protection, and two-factor authentication to access Confidential Information.

**Defendant's Employment with Bluewave**

16. Prior to his employment with Bluewave, Defendant worked, since 2015, as a Regional Account Manager at Telapprise, LLC ("Telapprise"), a company with a similar business model to Bluewave's. Bluewave acquired Telapprise (including its customer relationships and goodwill) in December 2021, and, on December 27, 2021, extended an offer employment to Defendant as a Regional Sales Executive.

17. As a Regional Sales Executive for Bluewave, Defendant was responsible for, among other duties, growing the Company's revenue by making sales to Bluewave's customers, identifying new sales opportunities with existing and potential customers, prospecting potential customers, maintaining awareness of Bluewave's market pricing and strategy to ensure the Company remained successful in a competitive landscape, maintaining and cultivating relationships with service providers, negotiating agreements with service providers on behalf of Bluewave's customers, participating in networking events, and collaborating with his colleagues to generate and close sales opportunities.

18. To perform these job duties, Defendant was given access to Bluewave's Confidential Information, including but not limited to customer names; information concerning price arrangements with customers; Bluewave's go-to-market plans and strategies with specific customers; information concerning customers' needs, desires, and preferences (and how Bluewave used such information to maintain a competitive advantage); Bluewave's product and service pipeline; proposals; bids; contracts and their contents; the type and quantity of products and services provided or sought to be provided; marketing plans; business strategies; financial information; and Bluewave's specific contacts at each customer's organization.

19. As a condition of his employment with Bluewave, and in exchange for substantial consideration, including employment as a Regional Sales Executive and the payments and benefits associated therewith, as well as access to Bluewave's Confidential Information and longstanding and existing customers (thus increasing his commission), Defendant signed the Agreement, a copy of which is attached hereto as Exhibit A.

20. In Section 2 of the Agreement, Defendant agreed not to use or disclose Bluewave's Confidential Information, agreeing:

> At all times, both during my employment by Company and after termination of such employment, I will keep in confidence and trust all Confidential Information,[1] and I will not use or disclose any Confidential Information without written consent of Company, except as may be necessary in the ordinary course of performing my duties as an employee of Company or as expressly authorized by this Agreement.

(Ex. A, ¶ 2.)

21. In so agreeing, Defendant specifically acknowledged that:

> [N]on-public information relating to Company's customers and prospects (including their needs to desires with respect to the types of products or services offered by Company, proposals, bids, contracts and their contents, the type and quantity of products and services provided or sought to be provided) is confidential and constitutes Confidential Information.

(Ex. A, ¶ 12.)

22. The Agreement contains a non-solicitation clause, in which Defendant agreed:

> [T]o protect such Confidential Information and Company's Customer goodwill, I agree that during the Restricted Period, I will not, either directly or indirectly, separately or in association with others:

---

[1] "Confidential Information" is defined in the Agreement as "any and all knowledge, data or information of Company that has value in or to Company's business and is not generally known, whether having existed, now existing, or to be developed during my employment, including information developed by me." (*See* Ex. A, p. 6.)

    (a) solicit, induce or attempt to induce any Customer or Potential Customer[2] to terminate, diminish, or materially alter in a manner harmful to Company its relationship with Company;

    (b) divert business of any Customer or Potential Customer away from the Company; or

    (c) perform, provide, or attempt to provide any Competing Services[3] for a Customer or Potential Customer.

(Ex. A, ¶ 12.)

23. The Agreement is narrowly tailored to protect Bluewave's legitimate business interests in its customer relationships and goodwill and confidential information. For example, the non-solicitation covenant is limited in scope to customers with whom Defendant had involvement within the 12 months before his employment with Bluewave ended and is limited in in duration to only 12 months following the termination of his employment. (*See* Ex. A ¶ 12, p. 7.)

---

[2] The Agreement defines "Customer or Potential Customer" as "any person or entity who or which, at any time during the one (1) year period prior to the date Defendant's employment with Company ended: (i) was (A) known to Defendant to have contracted for, been billed for, or received from the Company any product or service with which Defendant worked directly or indirectly during his employment by the Company or about which he acquired Confidential Information; and (B) in contact with him or in contact with any other employee, owner, or agent of the Company, of which contact Defendant was or should have been aware, concerning the sale or purchase of, or contract for, any product or service with which Defendant worked directly or indirectly during his employment with the Company or about which he acquired Confidential Information; or (ii) was solicited by the Company for the purpose of offering its products or services in an effort in which Defendant was involved or of which he was aware." (*See* Ex. A, p. 7.)

[3] The Agreement defines "Competing Services" as "any product, service, or offering or the research and development thereof, of any person or entity other than the Company that directly competes with a product, service, or offering, including the research and development thereof, of the Company with which Defendant worked directly or indirectly during his employment by the Company or about which he acquired Confidential Information during his employment by the Company." (*See* Ex. A, p. 7.)

7

24. In the Agreement, Defendant further acknowledged that any breach by him of the non-disclosure and/or non-solicitation covenants would cause irreparable harm to the Company for which no adequate remedy at law existed. Specifically, Defendant agreed:

> In the event I breach any provision (including any covenant) contained in this Agreement, I agree that Company shall be entitled to (i) injunctive relief to prevent me from violating my obligations under this Agreement, and (ii) any and all other remedies available. I acknowledge and agree that, in the event of any such breach by me, Company shall suffer immediate and irreparable harm and that money damages will not be adequate to compensate Company or to protect and preserve the status quo. Therefore, I HEREBY CONSENT TO THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER OR A PRELIMINARY OR PERMANENT INJUNCTION should I breach or attempt to breach any obligation (including any covenant) contained in this Agreement (without Company being required to post any bonds in connection therewith), in addition to any other remedies that may be available to it.

(Ex. A, ¶ 19.)

25. The Agreement additionally provides for the recovery of attorney's fees in the event prevails in an action instituted by the Company to enforce the terms of the Agreement:

> 19. <u>Enforcement</u>. . . . In the event Company institutes litigation or other proceeding, whether at law or in equity, to enforce the terms of this Agreement, and prevails on any claim made therein, Company shall be entitled to receive and I agree to reimburse Company for any reasonable attorneys' fees and costs incurred in any such litigation or proceeding.

(Ex. A, ¶ 19.)

26. Bluewave would not have hired Defendant as a Regional Sales Executive, given him customers to service and the related commission payments, or given him access to Bluewave's Confidential Information if Defendant had refused to sign and be bound by the terms of the Agreement.

27. As a result of Bluewave's substantial investment in Defendant's development as a Regional Sales Manager, Bluewave received in excess of one million dollars in revenue from

service providers in relation to clients with which Defendant worked during the approximate year and a half that he was employed by Bluewave.

28. Defendant's success at Bluewave was due in no small part to the access Bluewave provided to him, including to its longstanding relationships with service providers and customers.

29. Enforcing the Agreement is therefore of paramount importance, as Defendant's previous work with Bluewave's service provider partners and customers and access to Bluewave's Confidential Information uniquely position him to solicit Bluewave's customers with which he worked and to sell them services from the service provider partners with which he worked while employed at Bluewave.

**The Termination of Defendant's Employment with Bluewave**

30. On or about April 19, 2023, Bluewave terminated Defendant's employment for cause. Defendant was consistently insubordinate, regularly made improper and disparaging statements about Bluewave and its employees, and failed to conduct himself in a professional manner.

**Defendant Joins Bluewave's Competitor and Starts Soliciting Bluewave Customers**

31. Upon information and belief, in or about July 2023, Defendant began working as a Senior Sales Executive at DMS.

32. DMS is a technology solutions company in direct competition with Bluewave, as, *inter alia*, it sells telecommunications solutions to clients.

33. Upon information and belief, Defendant's job duties at DMS are substantially similar to his job duties at Bluewave and involve him soliciting clients to sell telecommunication

9

services to them, acting as an intermediary between the client and the third-party service provider.

34. Shortly after beginning his employment at DMS, Defendant began soliciting Bluewave customers with whom he had contact while employed by Bluewave.

35. For example, on or before August 1, 2023, Defendant solicited Bluewave's customer, Gateway Foundation ("Gateway"), on behalf of DMS, using Bluewave's Confidential Information in the process.

36. While employed at Bluewave, Defendant had managed Gateway's account, which included analyzing Gateway's needs, recommending solutions, engaging vendors, and implementing support. Defendant worked closely with Gateway's IS Director in this role.

37. On August 1, 2023, Defendant e-mailed Gateway's IS Director from Defendant's DMS e-mail account, copying two representatives of Rackspace, one of Bluewave's service provider partners. (*See* Ex. B).

38. In this email exchange, Defendant stated:

> Per our discussion last week, I wanted to introduce you to the Rackspace team (copied here) to schedule a discussion around your cloud adoption strategy (Exchange, etc.)
>
> They bring a wealth of experience and expertise in all things cloud, security, etc. and I'm confident this will be a worthwhile conversation to have with your team.
>
> Can you please coordinate internally and let us know dates/times to target for this?

(*See* Ex. B).

39. Gateway's IS Director subsequently responded to Defendant, but inadvertently e-mailed Defendant at his old Bluewave e-mail address. In this e-mail, Gateway's IS Director

10

indicated, among other things, that he would arrange a meeting with Spectrum VOIP, another of Bluewave's service provider partners. (*See* Ex. B).

40. Upon information and belief, the email exchange captured in Exhibit B is not a one-off communication, but part of a broader series of communications in which Defendant seeks to divert material business away from Gateway, exploiting the relationships that he developed at Bluewave using Bluewave's Confidential Information.

**Bluewave Attempts to Resolve the Matter Short of Litigation but is Rebuffed by Wukovits**

41. On August 9, 2023, Bluewave sent Defendant a letter reminding Defendant of his contractual obligations under the Agreement and demanding that he cease and desist from engaging in conduct that violates the Agreement. (*See* August 9, 2023, correspondence, a copy of which is attached hereto as Exhibit C).

42. Defendant responded through counsel on August 15, 2023, taking the position that he was not acting in violation of the Agreement. (*See* August 15, 2023, correspondence, a copy of which is attached hereto as Exhibit D).

43. Incredibly, in his correspondence, Defendant did not deny that he was providing services to Gateway, and intimated that he was in breach and/or intended breach his contractual obligations with respect to potentially numerous other clients of Bluewave. *See* Ex. D ("To the extent any other customer of Bluewave reaches out to Mr. Wukovits . . . this also does not constitute solicitation in violation of the Agreement.").

**COUNT I – BREACH AND THREATENED BREACH OF CONTRACT**
**(Non-Solicitation Covenant)**

44. Bluewave re-alleges the allegations contained in Paragraphs 1 through 43 above as though fully stated herein.

45. The Agreement is a valid and enforceable contract, supported by adequate consideration, that imposes upon Wukovits contractual obligations that the Company is entitled to enforce.

46. The Company has complied with its obligations under the terms of the Agreement.

47. As detailed, *supra*, at Paragraphs 34 to 40, and as reflected in Exhibit B, Wukovits has breached his obligations under the non-solicitation covenants set forth in Section 12 of the Agreement by, *inter alia*, (a) soliciting, inducing or attempting to induce at least one Bluewave customer to terminate, diminish, or materially alter in a manner harmful to Bluewave its relationship with Bluewave, (b) diverting the business of at least one customer away from Bluewave, and (c) performing, providing or attempting to perform or provide Competing Services (as defined in the Agreement) for at least one Bluewave customer.

48. Upon information and belief, Wukovits has violated his non-solicitation obligations with respect to other Bluewave customers beyond Gateway.

49. Wukovits, through his attorney, has additionally made clear that he does not intend to abide by his non-solicitation obligations, threatening further breaches of the Agreement.

50. Wukovits' breaches of the non-solicitation provisions in the Agreement have caused economic harm to Bluewave and, unless enjoined, his continued breaches will cause irreparable harm to Bluewave's business, including, but not limited to, loss of goodwill, reputation, competitive advantage, revenue, and profits that are impossible to accurately and fully calculate, for all of which Bluewave has no adequate remedy at law.

51. Accordingly, Bluewave is entitled to injunctive relief and to damages in an amount to be proven at trial.

## COUNT II – BREACH AND THREATENED BREACH OF CONTRACT
### (Non-Disclosure Covenant)

52. Bluewave re-alleges the allegations contained in Paragraphs 1 through 51 above as though fully stated herein.

53. The Agreement is a valid and enforceable contract, supported by adequate consideration, that imposes upon Wukovits contractual obligations that the Company is entitled to enforce.

54. The Company has complied with its obligations under the terms of the Agreement.

55. As detailed, *supra*, at Paragraphs 34 to 40, and as reflected in Exhibit B, Wukovits has breached his obligations not to use and/or disclose Confidential Information set forth in Section 2 of the Agreement by, *inter alia*, utilizing Confidential Information (as defined in the Agreement): (a) to solicit, induce or attempt to induce at least one Bluewave customer to terminate, diminish, or materially alter in a manner harmful to Bluewave its relationship with Bluewave; (b) to divert the business of at least one customer away from Bluewave, and (c) to perform, provide or attempt to perform or provide Competing Services (as defined in the Agreement) for at least one Bluewave customer.

56. Upon information and belief, Wukovits has breached his obligations not to use and/or disclose Confidential Information with respect to other Bluewave customers beyond Gateway.

57. Wukovits, through his attorney, has additionally made clear that he does not intend to abide by his non-use and non-disclosure obligations, threatening further breaches of the Agreement. (*See* Exhibit D).

58. Wukovits' breaches of Section 2 of the Agreement have caused economic harm to Bluewave and, unless enjoined, his continued breaches will cause irreparable harm to Bluewave's business, including, but not limited to, loss of goodwill, reputation, competitive advantage, revenue, and profits that are impossible to accurately and fully calculate, for all of which Bluewave has no adequate remedy at law.

59. Accordingly, Bluewave is entitled to injunctive relief and to damages in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Bluewave Technology Group, LLC respectfully requests that this Court grant the following relief:

(1) An order enjoining Defendant, and all persons or entities acting in concert with Defendant, from breaching or attempting to breach, directly or indirectly, the covenants set forth in Sections 12(a)-(c) of the Agreement;

(2) An order enjoining Defendant, and all persons or entities acting in concert with Defendant, from breaching or attempting to breach, directly or indirectly, the non-disclosure and non-use provisions set forth in Section 2 of the Agreement;

(3) Damages for the harm caused by Defendant's breaches in an amount to be determined at trial;

(4) An order awarding Plaintiff its attorney's fees, litigation costs and expenses, in accordance with Section 19 of the Agreement; and

(5) An order awarding Plaintiff such other further relief as this Court may deem just and proper.

Dated:  September 1, 2023                         **BLUEWAVE TECHNOLOGY GROUP, LLC**

/s/   Daniel J. Fazio
**DLA Piper LLP (US)**
Daniel J. Fazio (IL-6296352)
444 West Lake Street, Suite 900
Chicago, IL 60606-0089
daniel.fazio@us.dlapiper.com
(312) 368-2190
(312) 251-2890 (facsimile)
*Attorneys for Plaintiff*

## **VERIFICATION**

I, Lisa Kwiatkowski, make this declaration pursuant to 28 U.S.C. §1746 and under penalty of perjury. I am employed by Bluewave Technology Group LLC as Director of Sales. In this role, I oversee Bluewave's sales operations and have regular access to relevant business records maintained in the ordinary course of business. I also have familiarity with Mr. John Wukovits and his employment with Bluewave. I have read the foregoing Verified Complaint for Injunctive and Other Relief and know the contents thereof. The factual matters and things set forth therein are true to the best of my knowledge based on information and documents currently available to me and deemed reliable by me after reasonable inquiry, except for those matters set forth upon information and belief and, as to those, I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct.

X Lisa Kwiatkowski

Lisa Kwiatkowski

Signed by: 11e94eef-f146-45ac-bebc-cfda24b22559

**<u>Certificate of Service</u>**

   I hereby certify that, on September 1, 2023, I electronically filed the foregoing using the ECF System for the United States District Court for the Northern District of Illinois. Notice of this filing was sent via email to the following counsel for Defendant:

  Lance C. Ziebell
  Lavelle Law, Ltd.
  141 W. Jackson Blvd., Suite 2800
  Chicago, IL 60604
  LZIEBELL@LAVELLELAW.COM

           */s/ Daniel Fazio*
           Daniel Fazio
           DLA Piper LLP (US)